In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 13-1013

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIA I. RAMIREZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cr-00025-TWP-TAB-4 — **Tanya Walton Pratt**, *Judge.*

_____

ARGUED SEPTEMBER 12, 2014 — DECIDED APRIL 15, 2015

_____

Before EASTERBROOK, SYKES, and TINDER, *Circuit Judges.*

SYKES, *Circuit Judge.* Maria Ramirez was a courier and bookkeeper in an Indianapolis-based methamphetamine distribution ring. Police arrested her minutes after she left a stash house carrying about five pounds of meth worth more than $100,000. A search of the house yielded two handguns, and two additional firearms were later found in other houses used by her coconspirators. Ramirez pleaded guilty to conspiracy to distribute 50 or more grams of meth in

violation of 21 U.S.C. §§ 841(a)(1) and 846, but at sentencing she claimed to have been unaware that her coconspirators possessed guns. Over her objection the district court found that the coconspirators' firearm possession was reasonably foreseeable to her and increased the offense level under the Sentencing Guidelines by two levels for possession of a dangerous weapon. *See* U.S.S.G. § 2D1.1(b)(1).

Ramirez raises two arguments on appeal. First, she contends that the § 2D1.1(b)(1) enhancement was wrongly applied because she could not have reasonably foreseen that her coconspirators possessed guns. Second, she argues—for the first time on appeal—that she was eligible for a two-level reduction in her offense level under the so-called "safety valve" for nonviolent first-time drug offenders. *Id.* §§ 2D1.1(b)(16), 5C1.2(a).

We reject these arguments and affirm. Proper application of the firearm enhancement requires the sentencing court to make an individualized determination that the defendant should have foreseen her coconspirators' gun possession. At the same time, however, the judge is permitted to draw common-sense inferences when determining whether someone in the defendant's position reasonably should have foreseen that guns were in use in the conspiracy. Here, Ramirez had substantial and important roles in a sizable drug enterprise. Under these circumstances, it was not clear error to attribute the coconspirators' gun possession to her for purposes of the § 2D1.1(b)(1) enhancement.

Possession of a firearm in connection with the offense generally disqualifies the defendant from receiving safety-valve consideration. *Id.* § 5C1.2(a)(2). Ramirez insists, however, that even if her coconspirators' gun possession was

properly attributed to her for purposes of the § 2D1.1(b)(1) enhancement, the "no firearms" condition for safety-valve eligibility is narrower. More specifically, she argues that she was eligible for the safety valve because she neither possessed a gun herself nor induced another to do so. *See id.* § 5C1.2 cmt. n.4; *cf. id.* § 1B1.3(a)(1)(B).

The scope of the safety valve's "no firearms" prerequisite—more specifically, whether that condition includes liability for a coconspirator's gun possession—is a question of first impression in this circuit. Because Ramirez failed to raise this argument in the district court, our review is for plain error only, and we find none.

## I. Background

Law-enforcement officers began investigating an Indianapolis-area meth ring in October 2010. Through the use of undercover drug purchases, wiretaps, and electronic surveillance, they identified Ramirez as both a courier of drugs and money and the conspiracy's bookkeeper. The police eventually received intelligence that on March 4, 2011, a large meth shipment would leave a certain residence on Prestonwood Court in Indianapolis. They staked out the site and saw Ramirez arrive, enter the house, and leave a few minutes later with a five-gallon bucket. She was promptly stopped and searched and found in possession of about $5,900 in cash; the bucket contained more than 2,200 grams of meth with a street value in excess of $100,000. Officers then executed a search warrant at the residence—later identified as the ring's primary stash house—and seized large quantities of meth as well as two handguns hidden

under sofa cushions. Subsequent search warrants resulted in the seizure of two additional firearms, one from each of two other houses used by the conspiracy. A search of Ramirez's apartment yielded 180 grams of meth, a digital scale, financial logs, and several cell phones, but no weapons.

Ramirez pleaded guilty to one count of conspiracy to distribute 50 or more grams of meth in violation of 21 U.S.C. §§ 841(a)(1) and 846. Based on the drug quantity attributed to her, the base offense level for the crime was 38. Over Ramirez's objection, the district judge applied a two-level increase for possession of the firearms recovered from the stash houses. *See* U.S.S.G. § 2D1.1(b)(1). The judge then applied a three-level downward adjustment for acceptance of responsibility, *id.* § 3E1.1(b), and accepted the government's recommendation for an additional two-level reduction for substantial assistance, *id.* § 5K1.1. The resulting offense level was 35. As a first-time offender, Ramirez was in criminal history category I, yielding a recommended guidelines range of 168 to 210 months. The court imposed a below-guidelines sentence of 160 months.

Ramirez never argued that she qualified for the "safety valve" for nonviolent first-time drug offenders under § 5C1.2(a). If the safety valve had been applied, the range would have been 135 to 168 months. And if the firearm enhancement were removed as well, the range would have been even lower—108 to 135 months.

## II. Discussion

### A. The Firearm Enhancement

As directed by § 2D1.1(b)(1), the judge increased Ramirez's base offense level by two levels after finding her responsible for the four firearms recovered from the stash houses. We review the district court's factual findings for clear error and will reverse only if we are left with a definite and firm conviction that a mistake has been made. *United States v. Berchiolly*, 67 F.3d 634, 639–40 (7th Cir. 1995).

Under § 2D1.1(b)(1), a two-level enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed." Although no evidence suggested that Ramirez herself possessed any firearms, "in the case of a jointly undertaken criminal activity[,] … all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" are considered offense conduct attributable to the defendant. § 1B1.3(a)(1)(B).

To apply the firearm enhancement to a defendant who did not personally possess a gun (or have actual knowledge of a coconspirator's gun possession), the judge must make two findings by a preponderance of the evidence: (1) that someone in the conspiracy actually possessed a firearm in furtherance of the conspiracy, and (2) that the firearm possession was reasonably foreseeable to the defendant. *United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007). Ramirez does not dispute that her coconspirators possessed the four guns in furtherance of the meth enterprise. The only issue is whether their gun possession was reasonably foreseeable to her.

We have said that "the drug industry is by nature dangerous and violent, and a reasonable fact-finder is permitted to use his or her common sense in concluding that in a drug deal involving sizable amounts of money, the presence of firearms is foreseeable." *Berchiolly*, 67 F.3d at 640; s*ee also Luster*, 480 F.3d at 558 (The defendant's "frequent presence … where the drugs and guns were stored, and his knowledge of [the] large-scale cocaine distribution operation, raise the inference that he could have reasonably foreseen his coconspirator's possession of firearms for intimidation or protection."); *United States v. Banks*, 987 F.2d 463, 467–68 (7th Cir. 1993) ("Since guns are tools of the drug trade, it was reasonably foreseeable that [a coconspirator] would possess one during the offense.").

But the mere fact that Ramirez was a member of a drug-distribution ring does not make her strictly liable for all concealed weapons possessed by other conspirators. Rather, the judge was required to undertake an individualized inquiry about the foreseeability of the coconspirators' gun possession from the perspective of the defendant. *United States v. Vold*, 66 F.3d 915, 921 (7th Cir. 1995); *see also Luster*, 480 F.3d at 558 ("[T]he district court must determine that the coconspirator's firearm possession was reasonably foreseeable *to the defendant*.") (emphasis added). And common-sense inferences about foreseeability must have adequate support in the record. *See United States v. Block*, 705 F.3d 755, 764 (7th Cir. 2013) (rejecting the firearm enhancement because the district court "erroneously relied on several irrelevant facts").

The requirement of an individualized inquiry suggests that the scale, scope, and nature of the conspiracy, and the

defendant's role in it, should usually be considered when determining whether gun possession was reasonably foreseeable to the defendant.[1] *Compare Vold*, 66 F.3d at 921 (four-month, two-man conspiracy to cook methcathinone in a trailer and garage not sufficient to make the coconspirator's gun possession reasonably foreseeable), *with Luster*, 480 F.3d at 558 (coconspirator's gun possession reasonably foreseeable when the defendant knew he was part of a large-scale cocaine-distribution enterprise and spent significant time in the music studio where guns were stored).

The judge engaged in that analysis here, and the record supports the application of the enhancement. First, as noted in the Presentence Investigation Report ("PSR"), "Ramirez was an integral member of the distribution cell and engaged in daily activities on behalf of the organization that involved large sums of money and drugs." Indeed, she was the bookkeeper for the meth ring as well as a courier, suggesting that she was intimately familiar with the scope and daily operations of the organization beyond her own involvement. She regularly made deliveries between at least four properties, three of which contained guns, and her own home was used to store drug-dealing paraphernalia for her coconspirators. She was arrested holding five pounds of meth with a street value of more than $100,000. As the district judge

---

[1] In some rare cases, it might be possible to infer that a high-level participant in a large drug conspiracy has, by virtue of his position, special reason to think that guns are *not* involved (say, for example, if a ringleader specifically orders his associates not to carry guns). However, there is no evidence that Ramirez took any measures to assure herself that guns were not used by the meth ring. She simply claims never to have seen or heard about the firearms.

asked rhetorically, "[D]idn't she think people would have guns when they had that great a value of drugs?" Addressing Ramirez's defense counsel, the judge continued: "[T]hat's the nature of the business, isn't it, … that when they have large amounts of cash and large amounts of drugs, that, you know, it's commonly known that people have guns to protect their product?" On this record we're convinced that the judge conducted a sufficiently individualized assessment of the foreseeability of gun possession to Ramirez in light of her specific and significant role in the conspiracy.

In addition to the individualized findings about Ramirez, the judge also made a few comments about drug crimes in general. For example, the judge said that in her experience, "99.9 percent of … drug deals" involved guns. She also noted that some drug crimes involve home invasions and murders. These statements may have been exaggerated, but considered in context it's clear that they were meant only to emphasize that drug trafficking is, in the judge's words, a "dangerous business," and thus Ramirez should have been alert to the likelihood that guns would be involved. These remarks do not undermine our confidence that the judge applied the firearm enhancement after a particularized foreseeability analysis based on Ramirez's knowledge of the nature and scope of the conspiracy.

## B. Safety-Valve Eligibility

### 1. *Background*

Congress passed the so-called safety valve, 18 U.S.C. § 3553(f), in 1994, and the Sentencing Commission thereafter added it to the guidelines as § 5C1.2(a). The safety valve

"was meant to aid those less culpable defendants for whom a mandatory minimum sentence might seem harsh." *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996). To be eligible, a defendant must satisfy five conditions:

> (1) the defendant does not have more than 1 criminal history point … ;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense … ; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan … .

§ 5C1.2(a).

If the defendant satisfies all five conditions, "the court shall impose a sentence … without regard to any statutory minimum sentence." *Id.* The defendant is also entitled to a two-level reduction under § 2D1.1(b)(16) regardless of

whether the waiver of the statutory minimum affects the advisory sentence under the guidelines.[2]

The defendant bears the burden of demonstrating, by a preponderance of the evidence, her eligibility for the safety valve.[3] *See Ramirez*, 94 F.3d at 1100 ("The court's conclusion in favor of the defendant necessarily depends upon the defendant's persuasive ability to demonstrate to the court that he is eligible for the reduced sentence."). Here, the PSR made no mention of the safety value, and Ramirez did not raise—much less prove—her eligibility for it in the district court.

---

[2] If the two-level reduction under the safety valve had been applied, Ramirez's offense level would have been 33 and the advisory guidelines range would have been 135 to 168 months—still above the statutory minimum of 120 months. *See* 21 U.S.C. § 841(b)(1)(A)(viii).

[3] The requirement that defendants raise and prove safety-valve eligibility avoids the oddity of requiring the government to disprove the safety-valve factors preemptively as a matter of course. *See United States v. Harakaly*, 734 F.3d 88, 98 (1st Cir. 2013) ("This allocation of the burden makes perfect sense; were it otherwise, the government would be required to disprove the safety-valve factors *before* the defendant ever expressed an intent to seek a sentencing reduction via the safety valve."). It is also consistent with the general principle that while the government must prove sentencing enhancements by a preponderance of the evidence, "[w]hen a defendant requests a decrease in his offense level, he has the burden of demonstrating that he is eligible for the reduction by a preponderance of the evidence." *United States v. Soto*, 48 F.3d 1415, 1423 (7th Cir. 1995); *see, e.g.*, *United States v. Seidling*, 737 F.3d 1155, 1162 (7th Cir. 2013) (defendants bear the burden of proving their entitlement to an "acceptance of responsibility" adjustment under § 3E1.1); *United States v. Sandoval-Velazco*, 736 F.3d 1104, 1107 (7th Cir. 2013) (defendants bear the burden of proving their entitlement to a "mitigating role" adjustment under § 3B1.2).

## 2. *Forfeiture*

Despite Ramirez's burden, she and the government believe that she forfeited, rather than waived, her safety-valve argument. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).

The distinction is vital because a waived argument is unreviewable on appeal. *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001). As a general matter, we have held that "[i]f a specific objection was not raised at sentencing, we will view it as having been waived if the defendant had a strategic reason to forego the argument, that is, only if the defendant's counsel would not be deficient for failing to raise the objection." *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008).

It's hard to see how Ramirez's silence could be called a waiver; we cannot imagine any strategic reason to forego asking for the safety valve. That said, we think it would be an extremely rare case in which a district court would ever commit plain error—the standard of review for forfeited objections—by not applying the safety valve sua sponte. This is so because the fifth safety-valve condition requires the defendant to show that she "has truthfully provided to the Government all information and evidence … concerning the offense … ." U.S.S.G. § 5C1.2(a)(5). If the defendant does not affirmatively assert that she has given the government all the

information she has, it is highly unlikely that the record will unambiguously show that she did.[4]

We note as well that the safety valve cannot be applied until "the Government has been afforded the opportunity to make a recommendation." 18 U.S.C. § 3553(f). Since the government has not yet had a chance to make a recommendation, the most we could possibly do even if we found a plain error is remand for the district court to evaluate Ramirez's safety-valve eligibility, taking into account a recommendation by the government.

In any case, even if we assume that Ramirez merely forfeited her safety-valve request,[5] and that her failure to argue that she satisfied the fifth condition for eligibility is not fatal, she is not entitled to relief.

---

[4] The offense-level reduction for substantial assistance, U.S.S.G. § 5K1.1, requires only "substantial" assistance to the government, so the defendant's eligibility for a § 5K1.1 adjustment is not conclusive on whether she has provided "all the information and evidence [she] has," as required for the safety valve, *id.* § 5C1.2(a)(5).

[5] Other circuits have applied plain-error review where the defendant has failed to request safety-valve consideration, though not in published decisions. *See, e.g.*, *United States v. Molina-Borrayo*, 569 F. App'x 232, 234 (5th Cir. 2014) ("Molina-Borrayo argues that the district court erred in failing to apply the 'safety-valve' provision to his sentence. Because Molina-Borrayo did not raise this issue before the district court, it is reviewed for plain error."); *United States v. Thomas*, 532 F. App'x 384, 387 (4th Cir. 2013) ("Because Thomas did not request application of the safety valve reduction in the district court, his claim of error in this appeal is reviewed for plain error."), *cert. denied*, 134 S. Ct. 946 (2014); *United States v. White*, 136 F. App'x 227, 230 (11th Cir. 2005) ("White argues that the district court erred in failing to apply … [the] safety valve … . We review sentencing claims raised for the first time on appeal for plain error.").

**3. *Plain-Error Analysis***

A forfeited argument is reviewed for plain error. An error is plain if it is so obvious that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it. … It cannot be subtle, arcane, debatable, or factually complicated." *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011) (internal quotation marks omitted). If we find a plain error, we will reverse the decision below only if the error affected the defendant's substantial rights and seriously impugned the fairness, integrity, or public reputation of the judicial proceeding. *United States v. Goodwin*, 717 F.3d 511, 518 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 334 (2013).

One of the conditions for safety-valve eligibility is that the defendant "did not … possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]" § 5C1.2(a)(2). Ramirez argues that even if the firearms recovered from the stash houses were properly attributed to her for purposes of the firearm enhancement, the scope of the safety-valve's "no firearms" condition is narrower. Her argument is based on Commentary Note 4 to § 5C1.2, which states that "[c]onsistent with § 1B1.3 (Relevant Conduct), the term 'defendant,' as used in subsection (a)(2), limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." Accountability for coconspirators' conduct is noticeably absent from that list, although the reference to the Relevant Conduct guideline—§ 1B1.3, which authorizes coconspirator liability—introduces some ambiguity.

Even so, other circuits that have addressed this issue have concluded that the scope of the safety-valve's "no firearms" condition is narrower than the firearms enhancement and does not impute responsibility for the acts of coconspirators. *See United States v. Delgado-Paz*, 506 F.3d 652, 656 (8th Cir. 2007); *United States v. Figueroa-Encarnación*, 343 F.3d 23, 34 (1st Cir. 2003); *United States v. Pena-Sarabia*, 297 F.3d 983, 989 (10th Cir. 2002); *United States v. Clavijo*, 165 F.3d 1341, 1343–44 (11th Cir. 1999) (per curiam); *United States v. Wilson*, 114 F.3d 429, 432 (4th Cir. 1997); *In re Sealed Case*, 105 F.3d 1460, 1462 (D.C. Cir. 1997); *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997) (per curiam); s*ee also United States v. Harris*, 230 F.3d 1054, 1061 (7th Cir. 2000) (Ripple, J., dissenting) (summarizing the arguments in favor of distinguishing the scope of responsibility associated with the firearm enhancement and safety valve).

As we've noted, this is a question of first impression in our circuit. *See Harris*, 230 F.3d at 1058 (noting but not deciding the question whether coconspirator liability is a basis for determining possession of a firearm under § 5C1.2). If Ramirez had raised the issue at sentencing, then this would be an occasion for us to decide whether application of the firearms enhancement categorically forecloses eligibility for the safety valve. But her failure to make that argument before the district court limits us to review for plain error.

We rarely find plain error on a matter of first impression. In order to prevail, the defendant must show that "the error was so obvious and so prejudicial that a district judge should have intervened without being prompted by an objection from defense counsel." *United States v. Boswell*, 772 F.3d 469, 476–77 (7th Cir. 2014) (internal quotation marks

omitted). Matters of first impression are unlikely to be that obvious. *See United States v. Turrietta*, 696 F.3d 972, 981 (10th Cir. 2012) ("Since a district court cannot be faulted for failing to act on its own motion where the law is unsettled, a matter of first impression will generally preclude a finding of plain error."). And Ramirez's eligibility for the safety valve was not so obvious in this case.

It's true that the scope of the "no firearms" condition in § 5C1.2(a)(2) was flagged as an open question in our decision in *Harris*. 230 F.3d at 1058 ("Whether co-conspirator liability is a basis for determining possession of a firearm under § 5C1.2 is an issue that we have never addressed … . [W]e cannot reach its merits [here]."); *see also id.* at 1061 (Ripple, J., dissenting). But the issue remains unsettled in this circuit. Given the lack of guiding circuit precedent, the district court cannot be faulted for failing to raise and apply the safety valve sua sponte. Accordingly, we find no plain error.

AFFIRMED.