In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2520

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLAUDIUS L. FINCHER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 17-cr-00096 — **James D. Peterson**, *Chief Judge.*

ARGUED APRIL 17, 2019 — DECIDED JULY 9, 2019

Before MANION, SYKES, and BRENNAN, *Circuit Judges.*

MANION, *Circuit Judge.* Claudius Fincher possessed a firearm; that much is certain. The questions raised in this appeal are whether the district court clearly erred by finding Fincher's possession of the firearm was "in connection with" his drug offense, and whether resolving that factual question at sentencing without a jury determination violated the Sixth Amendment. Due to finding Fincher possessed the gun in connection with his drug offense, the court held Fincher was

ineligible for safety-valve relief and sentenced him to the mandatory minimum sentence of five years. For the reasons stated below, we affirm the district court's sentence.

## I. Background

Fincher was raised in Chicago. After attending a few years of college, he moved to the Madison, Wisconsin, area to spend time with his grandmother. Although he initially intended to spend only a few weeks there, he ended up staying for about a year before his arrest in this case. For much of this time he lived in his girlfriend's mother's home, but at the time of his arrest, he was residing in a small one-bedroom apartment with his uncle, Darnell Brunt, a drug dealer.

At some point after moving to Wisconsin, Fincher became involved in a drug-selling operation with Brunt. Law enforcement spotted them departing from and returning to an apartment complex in Sun Prairie, Wisconsin, before and after drug sales. Fincher was seen on the balcony of an apartment unit there. Law enforcement learned the legal renter of the apartment was a woman who resided in Chicago. In September 2017, Fincher and Brunt were arrested after selling heroin to undercover police officers.

On the day Fincher and Brunt were arrested, the police searched the apartment. The apartment was sparsely furnished, but it was apparent from the clothing and toiletries found there that at least two men were living there regularly. The officers found more than 100 grams of heroin in a bedroom closet. They also found a large amount of cash and three unfired .40 caliber bullets in the closet. A loaded .40 caliber handgun was found in a kitchen drawer. Prior to his arrest in this case, Fincher's criminal record was clean.

Fincher was indicted on October 4, 2017, with one count of conspiring to knowingly and intentionally possess with intent to distribute 100 grams or more of heroin and six counts of distribution of and intent to distribute heroin. 21 U.S.C. §§ 841(a)(1), 846. Fincher pleaded guilty to the conspiracy charge on February 20, 2018.

Fincher's offense carried a mandatory minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B)(i). The safety-valve provision of 18 U.S.C. § 3553(f), however, provides the potential for relief from a mandatory minimum sentence for certain offenses, including Fincher's offense. Under this provision, a court is precluded from applying the mandatory minimum if it finds the following criteria are met: (1) the defendant has a minimal criminal history; (2) the defendant did not use or threaten violence or possess a firearm in connection with the offense; (3) the offense did not result in death or injury to any person; (4) the defendant was not an organizer or leader in the offense; and (5) the defendant truthfully provided all information and evidence related to the offense to the government before the sentencing hearing. *Id.*

During the early stages of this case, it appeared Fincher might qualify for safety-valve relief because he had no criminal history. In fact, during Fincher's plea colloquy, the district judge discussed with him the "possibility that what we call the *safety valve* may apply to you."[1] Throughout the discussion, however, the judge emphasized that Fincher would have to meet the statutory criteria to qualify for safety-valve relief.

The initial presentence report did not recommend the firearm enhancement under U.S.S.G. § 2D1.1(b)(1). After a

---

[1] Plea Hr'g Tr. at 17–18 (emphasis in original).

forensic report revealed Fincher's DNA on the firearm recovered from the apartment, however, the government asserted Fincher was subject to the firearm enhancement. At that time, the government also informed defense counsel of its belief that Fincher was ineligible for safety-valve relief because he possessed a firearm in connection with the offense.

Fincher requested a presentence determination of his eligibility for safety-valve relief and objected to the application of the sentencing enhancement. The district court issued a presentence opinion and order finding Fincher possessed the firearm in connection with his offense, and therefore was ineligible for safety-valve relief and subject to a two-level enhancement. In doing so, the court rejected Fincher's argument that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the district court was precluded from making factual findings regarding his safety-valve eligibility.

At sentencing, the district court concluded Fincher's Guidelines range was 57 to 71 months' imprisonment. Due to the large quantity of heroin involved, however, a five-year mandatory minimum sentence applied. 21 U.S.C. § 841(b)(1)(B)(i). Fincher was sentenced to five years' imprisonment. He appeals.

## II. Discussion

Fincher raises two challenges to the district court's sentence. One is constitutional, asserting the district court's finding precluding safety-valve eligibility violated the Sixth Amendment. The other is factual, asserting the district court

clearly erred in finding Fincher's possession of the gun was in connection with his offense.

### A. *Alleyne* and Safety-Valve Eligibility Factors

Fincher challenges the district court's finding that his possession of the handgun was in connection with his offense as a violation of the Sixth Amendment under *Apprendi* and *Alleyne*. We review such challenges *de novo*. *United States v. Wolfe*, 701 F.3d 1206, 1216 (7th Cir. 2012).

The Supreme Court established in *Apprendi* that the Sixth Amendment and the Due Process Clause of the Fifth Amendment, taken together, "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" 530 U.S. at 476–77; *see also* U.S. CONST. amends. V, VI. The Court concluded that any fact (other than a prior conviction) that "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

In *Alleyne*, the Court reasoned any fact other than a prior conviction that alters the prescribed sentencing range in a way that aggravates the penalty is an element of the crime to which *Apprendi* applies. Such a fact "necessarily forms a constituent part of a new offense." *Alleyne*, 570 U.S. at 114–15. The Court held facts that increase the mandatory minimum aggravate the crime's penalty. *Id.* at 103. "[T]he core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 113.

Fincher seeks to extend the reasoning of *Alleyne* to preclude judicial factfinding of safety-valve eligibility factors. As

Fincher's argument goes, the safety-valve provision controls the application of the mandatory minimum: if the defendant is found to be ineligible for safety-valve relief, he is subject to a mandatory minimum from which he would otherwise be free. In Fincher's case, the application of a five-year mandatory minimum hinged on the finding that he possessed the gun in connection with his offense. Thus, he argues that finding increased his mandatory minimum sentence.

This court has not yet considered the question of whether *Alleyne* bars judicial factfinding of safety-valve eligibility. Each of the other circuits that have considered the question, however, has concluded it does not. Four circuits have issued published opinions to this effect. *United States v. Leanos*, 827 F.3d 1167, 1169–70 (8th Cir. 2016); *United States v. King*, 773 F.3d 48, 55 (5th Cir. 2014); *United States v. Lizarraga-Carrizales*, 757 F.3d 995, 997–99 (9th Cir. 2014); *United States v. Harakaly*, 734 F.3d 88, 97–99 (1st Cir. 2013). Three others have issued unpublished opinions or orders to the same effect. *United States v. Caballero*, 672 Fed. App'x 72, 74–75 (2d Cir. 2016); *United States v. Juarez-Sanchez*, 558 Fed. App'x 840, 843 (10th Cir. 2014); *United States v. Silva*, 566 Fed. App'x 804, 807–08 (11th Cir. 2014).

Underlying these decisions is the recognition that a mandatory minimum sentence is not increased by the defendant's ineligibility for safety-valve relief. Rather, it is already triggered by the offense; the safety-valve provision merely provides lenity. Since "*Alleyne*, by its terms, applies to facts that 'increase[] the mandatory minimum,'" it does not apply to judicial factfinding that precludes safety-valve relief because such factfinding "does not increase [the] baseline minimum sentence." *See Harakaly*, 734 F.3d at 97–99. "A fact that

precludes safety-valve relief does not trigger or increase the mandatory minimum, but instead prohibits imposition of a sentence below a mandatory minimum already imposed as a result of the guilty plea or jury verdict." *Id.* at 98.

We find this reasoning sound. In Fincher's case, the mandatory minimum sentence is triggered by the statutes defining his offense. 21 U.S.C. §§ 841(B), 846. The safety-valve provision potentially allows for relief from that mandatory minimum, but it does not increase or trigger it.

Fincher argues this reasoning is improperly formalistic. He contends it draws a distinction based only on the difference between stating something in positive versus negative language. He informs us "a condition that causes something to not *not* happen, makes it happen." We disagree. The distinction is more than merely positive versus negative phrasing. It goes to the heart of *Alleyne*'s purpose, which is to determine what constitutes an "element" of a crime. *Alleyne*, 570 U.S. at 114 ("[T]he essential Sixth Amendment inquiry is whether a fact is an element of the crime."). Under *Alleyne*, a fact that combines with the base offense to create a new, aggravated offense is an element of the crime. *Id.* at 113. Safety-valve eligibility factors do not combine with the base offense to create a new, aggravated crime. Instead, the base offense triggers the mandatory minimum on its own. Safety-valve eligibility mitigates the offense's penalty; it does not aggravate it. *See King*, 773 F.3d at 55.

Therefore, we hold that judicial factfinding precluding safety-valve relief does not violate the Sixth Amendment. The

district court did not err under *Alleyne* by finding Fincher possessed the gun in connection with his offense.

### B. Possession in Connection with the Offense

Fincher challenges the district court's finding that his possession of the firearm was connected to his offense of conspiracy to distribute heroin. Based on this finding, the court held Fincher was ineligible for safety-valve relief and subject to a two-level enhancement under the Sentencing Guidelines. We review the district court's factual findings underlying safety-valve eligibility and the sentencing enhancement for clear error. *United States v. Collins*, 924 F.3d 436, 441 (7th Cir. 2019) (standard of review for safety-valve eligibility findings); *United States v. Kopp*, 922 F.3d 337, 341 (7th Cir. 2019) (standard of review for Guidelines enhancement findings).

Because whether Fincher possessed the gun in connection with the crime is central to both his safety-valve eligibility and the application of the Guidelines enhancement, Fincher's arguments against both are the same. The burden of proof, however, is different for each. For safety-valve eligibility, Fincher had to prove to the district court by a preponderance of the evidence that he did not possess the gun in connection with his offense. *United States v. Ramirez*, 783 F.3d 687, 692 (7th Cir. 2015). Concerning the firearm enhancement, once the government proved through DNA evidence that Fincher possessed the gun, the burden shifted to Fincher to show it was "clearly improbable" his possession was in connection with his offense. *United States v. Rea*, 621 F.3d 595, 606 (7th Cir. 2010). Fincher cannot meet the "clearly improbable" standard if he fails to meet the lower preponderance of the evidence standard. *Cf. United States v. Bolton*, 858 F.3d 905, 914 (4th Cir. 2017) (discussing the interplay between these burdens of proof). We

therefore focus our discussion on whether the district court clearly erred by finding Fincher had not met the preponderance of the evidence burden.

Fincher argues there was a lack of "specific" evidence of connection to the crime. By this, he means there was no evidence drugs were sold in the apartment where the gun was located, no evidence he possessed or mentioned the gun while selling drugs, and no evidence his DNA was transferred to the gun during the conspiracy period rather than at some point before. He argues that, in the absence of specific evidence connecting a gun to the crime, a district court should not be able to make such a finding. Otherwise, he asserts, defendants who lawfully possess a weapon must undertake the virtually impossible task of proving a negative to show it was not possessed in connection with the crime.

But the danger of which Fincher warns—a district court's presumption of a connection based merely on evidence of possession—is not present here. The evidence the district court relied on is not as scant as Fincher makes it out to be.

The court recited several facts beyond Fincher's mere possession to support the conclusion the gun was possessed in connection with the offense. The court noted the handgun was not a hunting gun, so the type of firearm did not suggest it had a purpose unrelated to the offense. Some ammunition was stored in the closet where the drugs were stored, and the gun was kept loaded and in a readily accessible place. The small size of the apartment and consequent proximity between the loaded gun and the drug stash also supported the

conclusion that the gun's purpose was to protect the drug operation.

Perhaps most relevant was the court's finding that the apartment where the handgun was located appeared to be specifically used as a base of operations for the drug conspiracy. Neither Fincher nor Brunt was the legal renter of the property. The evidence suggested Fincher had only resided there temporarily during the conspiracy and for the purpose of furthering the conspiracy. Furthermore, Fincher presented no evidence the gun was used for any purpose other than protecting the drug operation. Given the deference owed to the district court's findings, we see no justification for overturning the court's finding that the gun was possessed in connection with the drug conspiracy.

We hold the district court did not err in finding Fincher failed to show by a preponderance of the evidence his possession of the handgun was not in connection with his offense. Thus, the district court properly denied safety-valve relief. Furthermore, since Fincher consequently could not show it was "clearly improbable" that he possessed the gun in connection with his offense, the court properly applied the two-level firearm enhancement.

### III.    Conclusion

For the reasons stated above, we AFFIRM the sentence of the district court.