In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1336

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERMAINE STAMPS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 19-cr-00102 — **William M. Conley**, *Judge.*

ARGUED DECEMBER 3, 2020 — DECIDED DECEMBER 29, 2020

Before SYKES, *Chief Judge*, and FLAUM and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Jermaine Stamps pled guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Because his conduct involved more than 50 grams of methamphetamine, Stamps faced a statutory minimum 60-month prison sentence unless he qualified for the "safety-valve" provision of 18 U.S.C. § 3553(f). The district court sentenced Stamps to 60 months in prison—

the lowest sentence possible—based on its finding that Stamps possessed a firearm in connection with his drug offense, therefore disqualifying him from safety-valve relief.

There is no question that Stamps illegally owned a gun. The district court's finding that Stamps possessed the gun in connection with his drug offense, however, was based on a legal error. Rather than evaluating whether Stamps had shown by a preponderance of evidence that the gun was unrelated to his drug offense, the district court found only that Stamps could not prove that it was "clearly improbable" that the gun was connected to his drug offense, imposing a higher burden on Stamps than is required for him to prove safety-valve eligibility. The district court's error was not harmless. We thus vacate Stamps's sentence and remand for resentencing.

## I. Background

Stamps was living in Fitchburg, Wisconsin when, on five different occasions, he sold methamphetamine to a police informant. All five sales took place in public—the first four near a shopping mall and the fifth near a Walgreens Pharmacy. Following the final sale, police followed Stamps to his home and, after obtaining a search warrant, executed a search of his two-bedroom apartment. In one of the bedrooms, police found two bags of methamphetamine, each containing over 25 grams, as well as packaging material, a scale, and a glass pipe. In the second room (Stamps's bedroom), police found a loaded handgun stored between Stamps's mattress and box spring, as well as Stamps's wallet and $1,079 in cash. The police arrested Stamps.

Once in custody, Stamps came clean about his drug deal-
ing. He confessed to having sold drugs for the last five years,
and estimated having ten regular customers to whom he sold
primarily methamphetamine, and occasionally heroin.
Stamps initially denied owning any weapons, but later admit-
ted owning a 9mm Glock handgun, but for reasons unrelated
to his drug dealing business.

Stamps told police that he bought the gun as a measure of
self-defense after receiving a series of physical threats from
people in his community. The threats arose from Stamps's
wrongful implication in a 2017 murder investigation. At the
time, Stamps officially cleared his name—the police corrobo-
rated his alibi and no longer considered him a suspect. Unof-
ficially, however, others in the community continued to hold
Stamps responsible for the murder and threatened to harm
him in retribution. On one occasion, someone even fired shots
into Stamps's apartment. At that point, Stamps explained, he
purchased a gun for protection.

In August 2019, a federal grand jury returned an indict-
ment against Stamps, charging him with five drug-related
counts, and one count of possession of a firearm as a con-
victed felon in violation of 18 U.S.C. § 922(g).[*] Three months
later, in November 2019, Stamps pled guilty to one count of
possession of methamphetamine with intent to distribute 50
grams or more in violation of 21 U.S.C. § 841(a)(1).

The U.S. Probation Office prepared a presentence investi-
gation report ("PSR") in advance of Stamps's sentencing. The

---

[*] Stamps was prohibited from possessing a firearm as a result of an unre-
lated 2010 felony conviction in Wisconsin.

PSR recommended a two-level increase under the Sentencing Guidelines pursuant to § 2D1.1(b)(1) based on the weapon recovered from Stamps's apartment. The report noted that while Stamps "may have been prompted to obtain the firearm in response to the allegations and threats" following his wrongful implication in the 2017 murder, Stamps "was a long-term drug distributor who illegally possessed a firearm in the apartment where he maintained his stash of drugs and drug distribution paraphernalia." Accordingly, "[i]t is not clearly improbable that the firearm was connected with the offense." Given the firearm, the PSR did not recommend Stamps receive safety-valve relief.

Stamps appeared before the district court on February 12, 2020 for sentencing. The district court noted that Stamps objected to the firearm enhancement "which disqualifies him from the safety valve relief under Section 3553(f)." The district court overruled the objection and added the two-level enhancement under § 2D1.1. In applying the firearm enhancement, the court explained that "the defendant possessed a dangerous weapon and it is not clearly improbable that the Glock 9 millimeter handgun … was connected with the defendant's relevant drug trafficking conduct." The district court did not apply the safety-valve reduction.

After calculating the guideline range of 70 to 87 months with a 60-month mandatory minimum, the district court asked for further comments before imposing the sentence. When the government raised the issue of defendant's lower burden of proof for the safety-valve reduction than for the firearm enhancement, the district court responded that it had "already addressed the objection" and it thought "that is a misstatement of the law."

The government then asked the court to clarify whether it had ruled on Stamps's argument that he only had to prove by a preponderance of the evidence that the firearm was not used in connection with his offense in order to qualify for safety-valve relief. Referring to its earlier discussion of the firearm, the court stated: "I already ruled that the safety valve wasn't available." Then the following exchange took place:

> Government: But is the Court finding that [Stamps's counsel] is incorrect, that her burden is not lower for the safety valve provision?

> Court: Yes. I mean, it's a preponderance of the evidence --

> Government: Right.

> Court: -- but more than that it's -- the standard is clearly improbable, which raises the burden, which is why I feel compelled to make the finding that I made.

The district court then sentenced Stamps below the guideline range to the 60-month mandatory minimum. The court explained that "that sentence more than adequately addresses the dangerous conduct the defendant was in," and noted further: "Particularly if I account for his candor with law enforcement and the fact that he has never spent any time in prison before, I might well, but for the statute, have considered a lower sentence."

## II. Discussion

Stamps argues on appeal that the district court applied the wrong standard in finding him ineligible for safety-valve relief, and that we must vacate his sentence so that the district

court can consider his safety-valve eligibility under the correct legal standard. The government concedes this error. We agree and vacate Stamps's sentence.

We review the district court's interpretation of the safety-valve provision under the statute and the Sentencing Guidelines de novo. *United States v. Collins*, 924 F.3d 436, 441 (7th Cir. 2019). We review the district court's factual findings and its ultimate determination of a defendant's safety-valve eligibility for clear error. *Id.*

Stamps objected to the two-level firearm enhancement, and further argued that he was not subject to the 60-month mandatory minimum sentence because he qualified for relief under the safety valve. Under the safety-valve provision, a court can sentence a defendant below the statutory minimum sentence accompanying certain drug-related offenses if the defendant meets five criteria: (1) his criminal history is minimal; (2) he did not use or threaten violence or possess a firearm in connection with his offense; (3) the offense did not result in death to any person; (4) he was not an organizer or leader in the offense; and (5) he truthfully provided all information and evidence about the offense to the government before his sentencing hearing. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. It is undisputed that Stamps meets four out of the five criteria, and the only factor in question is whether he possessed his gun "in connection with" his offense. Similarly, § 2D1.1(b)(1) provides for a two-level enhancement if Stamps possessed a dangerous weapon.

Thus, whether Stamps possessed a gun in connection with his drug offense is central to both his eligibility for safety-valve relief and the application of the § 2D1.1(b)(1) Guidelines enhancement. Once the government proves his possession of

the firearm, the burden then shifts to Stamps under both the safety valve and § 2D1.1(b)(1), but the burden of proof is different and distinct for each section. In *United States v. Fincher*, 929 F.3d 501 (7th Cir. 2019), we explained that for safety-valve eligibility, the defendant needs to prove only by a preponderance of evidence that he did not possess the gun in connection with his offense. *Fincher*, 929 F.3d at 505. To challenge a § 2D1.1(b)(1) enhancement, however, the defendant must show that it was "clearly improbable" that he possessed the gun in connection his offense. *Id.*

At sentencing, Stamps argued that it was clearly improbable he possessed the gun in connection with his offense, so the Guidelines enhancement should not apply. He separately argued that he had established by a preponderance of the evidence that the gun was not connected to his offense, and so he was eligible for safety-valve relief. The district court found that Stamps could not meet the higher, "clearly improbable" standard, and, notwithstanding the government's attempts to clarify the issue, did not separately consider whether the evidence met the lower, preponderance of the evidence standard.

Despite the government's contention otherwise, we cannot infer from the record that the district court's discussion of the "clearly improbable" standard means that it necessarily considered and rejected Stamps's argument that he nonetheless qualified for the safety valve under the lower standard. As we explained in *Fincher*, it is true that if Stamps cannot meet the lower preponderance of the evidence standard, he cannot meet the higher "clearly improbable" standard. *Fincher*, 929 F.3d at 505. It does not follow, however, that Stamps's inability to meet the higher "clearly improbable"

standard automatically forecloses his chance to meet the lower preponderance of the evidence standard.

The government contends that even if the district court erred, its error was harmless. "We will find harmless error 'when the government has proved that the district court's sentencing error did not affect the defendant's substantial rights.'" *United States v. Clark*, 906 F.3d 667, 671 (7th Cir. 2018) (quoting *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009)). "An error is harmless if it 'did not affect the district court's selection of the sentence imposed.'" *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Our question is: "knowing what we now know, would the district court have selected the same sentence?" *Id.*

The record before us does not allow us to conclude that had the court not erred, Stamps's sentence would be the same. On one hand, as the government points out, the type of gun weighs against a finding that the gun had a purpose unrelated to the drug offense. Further, the government argues that the firearm and the drugs were located in the same apartment. But these facts are not dispositive here.

On the other hand, several facts weigh in Stamps's favor. Stamps provided a non-drug related reason for owning the gun—he wanted to be able to protect himself after he was wrongfully accused of murder. The district court found him credible, and other evidence in the record corroborated his story. Stamps, for example, bought the gun after being implicated in the murder, though he had already been selling drugs for a couple of years at that point. Stamps also argued that he conducted all of his drug deals outside of his home, none of his customers knew where he lived, and he never carried the

gun with him to drug transactions. In addition, in contrast to *Fincher*, the firearm was located in a different room than the drugs. Whether safety-valve relief is appropriate is a fact-intensive inquiry. We remand for the district court to decide in the first instance whether Stamps has met the preponderance of the evidence standard.

The district court's statements at sentencing underscore our finding that its error was not harmless. The district court specifically stated that "but for the statute" it "might well" have considered a lower sentence. In other words, if Stamps had qualified for safety-valve relief, the district court might have imposed a shorter sentence. We therefore cannot say that the district court's error was harmless and did not affect Stamps's sentence.

VACATED AND REMANDED.