FILED
United States Court of Appeals
Tenth Circuit

March 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROMAN JUAREZ-SANCHEZ,

Defendant - Appellant.

No. 13-4054
(D.C. No. 2:12-CR-00515-TS-RTB-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **BALDOCK**, Circuit Judge.

Roman Juarez-Sanchez appeals his conviction and sentence for cultivating marijuana in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction under 28 U.S.C. § 1291 and dismiss this appeal.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

In July 2012, a sheriff's deputy pulled over a vehicle that had been seen near a marijuana-cultivating operation on public land in Iron County, Utah. The deputy detected the smell of marijuana inside the vehicle and obtained the consent of the driver, Gabriela Lopez, to search the vehicle. Inside, the deputy and other officers found eighty-eight pounds of marijuana. They arrested Lopez and her two passengers, Marcelo Contreras and Juarez-Sanchez, and they raided the cultivating operation, seizing 4,211 marijuana plants.

At trial, Lopez and Contreras testified against Juarez-Sanchez. Lopez stated that in California, Juarez-Sanchez bought the car they were arrested in "to pick up marijuana," R, Vol. III at 131; he bought the gas for the trip to Utah; he gave her directions; he called ahead to the operation and told someone to place a branch in the road so they would know where to stop; he brought food to the workers at the operation; and they left the operation with Contreras and several bags of marijuana. Contreras testified that he helped cultivate the marijuana; Juarez-Sanchez was one of his three "bosses," *id.* at 184; Juarez-Sanchez asked him after arriving at the operation "if there was quite a bit still to do to finish cutting the marijuana," *id.* at 185; and that after being arrested, Juarez-Sanchez complained to him "that the other bosses were not helping him," *id.* at 186.

There was also testimony from law-enforcement officers who interviewed Juarez-Sanchez after his arrest. They testified that Juarez-Sanchez said "his job was

to bring supplies to the garden and also to take marijuana from the garden back to California," *id.*, Vol. IV at 26, and that he did so at the direction of one of the other bosses. Juarez-Sanchez's phone showed 194 calls to that boss in the one-month period before his arrest.

The jury found Juarez-Sanchez guilty of manufacturing a controlled substance by cultivating 1,000 or more marijuana plants. The U.S. Probation Office prepared a presentence report (PSR), noting that Juarez-Sanchez faced a statutory mandatory-minimum sentence of 120 months and that the Sentencing Guidelines established a range of 121-to-151 months' imprisonment based on a criminal history category of one and an offense level of thirty-two. In calculating the offense level, the Probation Office included a four-level enhancement to reflect Juarez-Sanchez's role as an organizer or leader of a criminal activity involving five or more persons. *See* U.S.S.G. § 3B1.1(a). Without the enhancement, the Guidelines range would have been 78 to 97 months' imprisonment. Additionally, the PSR noted that Juarez-Sanchez was subject to a statutorily mandated 60-month term of supervised release.

At sentencing, the court found that Juarez-Sanchez qualified as an organizer or leader of criminal activity, although "it [was] a close call." R., Vol. V at 27. The court reasoned:

> Juarez-Sanchez's role in this crime included buying and delivering food supplies, renting and/or purchasing vehicles to transport supplies and workers to and from the marijuana grow. And he recruited others to assist him on this specific . . . occasion.

. . . [H]e identified himself as one of three bosses in the organization. He communicated directly with . . . the on-site grow supervisor[ ] to coordinate delivery of the food and receipt of freshly harvested marijuana. His ability to find the grow site in the middle of the night as he did indicates that he had been there before.

[He] had over 200 telephone contacts in a one-month period with . . . another boss in the organization.

R., Vol. V at 22.

Thus, as an organizer or leader of criminal activity, Juarez-Sanchez could not take advantage of the 78-97 month Guidelines range through a lesser offense level and the safety valve in 18 U.S.C. § 3553(f), which could have nullified the mandatory minimum sentence.[1] Finally, the court rejected the government's request for a sentence in the middle of the Guidelines 121-151 month range, and it sentenced Juarez-Sanchez to 120 months' imprisonment, with 60 months of supervised release.

On appeal, Juarez-Sanchez's counsel filed an *Anders* brief and a motion to withdraw.[2] Juarez-Sanchez filed a pro se supplemental brief. The government declined to file a brief.

---

[1]     The safety valve is available if

the defendant has a minimal criminal history, did not use or threaten violence, possess a dangerous weapon, cause death or serious bodily injury, was not a leader, organizer, or supervisor of others in the offense, was not engaged in a continuing criminal enterprise, and . . . had truthfully provided to the Government all information and evidence the defendant has concerning the offense.

*United States v. Salzano*, 158 F.3d 1107, 1117-18 (10th Cir. 1998).

[2]     "The Supreme Court's decision in *Anders v. California*, 386 U.S. 738 (1967), authorizes counsel to request permission to withdraw where counsel conscientiously

(continued)

- 4 -

## DISCUSSION

### I. Counsel's *Anders* Brief

A.     Sufficiency of the Evidence

Counsel for Juarez-Sanchez raises and dismisses a potential challenge to the sufficiency of the evidence underlying the cultivating-marijuana conviction. "We review the sufficiency of evidence de novo" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Serrato*, 742 F.3d 461, 472 (10th Cir. 2014).

Our review indicates that the evidence was more than sufficient to support Juarez-Sanchez's conviction for cultivating marijuana. "To convict [Juarez-Sanchez] for manufacturing at least 100[0] plants of marijuana, the jury had to find [he] (1) knowingly or intentionally manufactured marijuana plants, and (2) he knew the amount of the controlled substance he manufactured was at least 100[0] plants." *United States v. Prince*, 647 F.3d 1257, 1269-70 (10th Cir. 2011).

The evidence at trial showed that Juarez-Sanchez was one of the "bosses" for the cultivating operation, he bought a car to pick up the marijuana grown there, he took food to the workers, he picked up one of the workers (Contreras) and eighty-eight pounds of marijuana harvested from the operation, and he spoke with Contreras about how much marijuana remained. Thus, we conclude that any rational

---

examines a case and determines that any appeal would be wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005)

trier of fact could have found Juarez-Sanchez guilty beyond a reasonable doubt of cultivating marijuana.

B.     Safety Valve

Juarez-Sanchez's counsel next raises and dismisses a potential challenge to the district court's decision to not apply the § 3553(f) safety valve at sentencing. "We review the district court's determination of a particular defendant's eligibility for relief under § 3553(f) for clear error." *United States v. Gonzalez–Montoya*, 161 F.3d 643, 651 (10th Cir. 1998).

As the district court noted, Juarez-Sanchez qualified as an organizer or leader of the cultivating operation given that he made the arrangements necessary to deliver food to the workers and pick up harvested marijuana. In the process, he directed Lopez as they traveled to the operation and queried Contreras about the operation's progress. And while Juarez-Sanchez may have taken directions from another one of the operation's bosses, he nevertheless acted as an organizer or leader of the operation. Under these circumstances, we conclude that the district court did not clearly err in denying Juarez-Sanchez the benefit of the § 3553(f) safety valve.

II.  Juarez-Sanchez's Pro Se Supplemental Brief

A.     Traffic Stop and Seizure of Marijuana

Juarez-Sanchez argues pro se that the traffic stop and seizure of marijuana (apparently both in the car and at the cultivating operation) violated his Fourth Amendment rights. But he did not raise these arguments in the district court and he

does not provide good cause for why they were not raised. Consequently, his Fourth Amendment arguments are waived. *See United States v. Burke*, 633 F.3d 984, 988-89 (10th Cir. 2011) ("[A] suppression argument raised for the first time on appeal is waived (i.e., completely barred) absent a showing of good cause for why it was not raised before the trial court.").

B.      Safety Valve

Regarding his sentence, Juarez-Sanchez argues that under the Sixth Amendment, only a jury could make the finding that he was an organizer or leader of criminal activity. He relies on *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), which held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."[3] But the mandatory minimum sentence here was not increased by the finding that Juarez-Sanchez was an organizer or leader. Rather, that finding simply precluded Juarez-Sanchez from using the safety valve in § 3553(f) to avoid the mandatory minimum sentence. *See United States v. Harakaly*, 734 F.3d 88, 98 (1st Cir. 2013) *cert. denied*, 2014 WL 499422 (U.S. Mar. 10, 2014) (noting that *Alleyne* applies only to facts that increase the mandatory minimum and concluding that "[a] fact that precludes safety-valve relief does not trigger or increase the mandatory minimum, but instead prohibits imposition of a sentence below a mandatory minimum already imposed as a result of the guilty plea or jury verdict.").

---

[3]      "*Alleyne* applies to cases like this one that were on direct appeal when it was released." *United States v. Acosta-Colon*, 741 F.3d 179, 192 n.6 (1st Cir. 2013).

Thus, the district court's finding that Juarez-Sanchez was an organizer or leader did not violate the Sixth Amendment.

C.     Supervised Release

Juarez-Sanchez next asserts, without any discussion, that "[t]he district court erred in imposing a 60-month supervised release sentence on this known deportable Appellant absent individualized U.S.S.G. Amendment 742 consideration." Pro Se Supplemental Br. at 5. But in the district court, he did not make this or any other argument against the imposition of supervised release despite having the opportunity to do so. And while we would nevertheless review for plain error, *see United States v. Mike*, 632 F.3d 686, 691 (10th Cir. 2011), Juarez-Sanchez offers nothing in support of even plain-error review. "[T]he failure to argue for plain error and its application on appeal surely marks the end of the road for an argument for reversal not first presented to the district court." *United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) (ellipsis and internal quotation marks omitted).

**CONCLUSION**

For the reasons discussed above, we conclude that there are no nonfrivolous grounds for appeal. We therefore grant counsel's motion to withdraw and dismiss this appeal.

Entered for the Court

John C. Porfilio
Senior Circuit Judge