**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 31, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

FEI XIE,

　　Defendant - Appellant.

No. 25-6034
(D.C. No. 5:23-CR-00278-HE-7)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, Chief Judge, **KELLY**, and **FEDERICO**, Circuit Judges.[**]

---

　　In August 2024, a jury found Defendant-Appellant Fei Xie guilty of one count of drug conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). I Aplee. Supp. App. 29–30. Mr. Xie now appeals from (1) the admission of testimony by a government witness, which he claims was improper overview testimony; (2) the admission of an organizational chart, which he claims was improperly admitted under Federal Rules of Evidence 611 and 1006; and (3) the district court's application of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

the organizer/leader enhancement at sentencing.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## Background

The parties are familiar with the facts, so we need not restate them at length here.  Suffice it to say that, from at least 2019 to 2023, Mr. Xie was part of a drug trafficking organization that engaged in the cultivation, brokerage, and distribution of black-market marijuana across the country (the "Lin DTO").  See II Aplee. Supp. App. 6–10.  Naigang Lin (Naigang) directed the operation, with Mr. Xie serving as Naigang's business partner, financing grow operations and maintaining stash houses. Id. at 6, 9.  The government indicted Mr. Xie and other members.  Id. at 4–5.  While Naigang and others pled guilty, Mr. Xie and another defendant proceeded to trial.  Id.

The government's first witness was Homeland Security Investigations (HSI) Special Agent (SA) Josh Reinsch, the lead case agent investigating the Lin DTO. I Aplt. App. 31, 33.  SA Reinsch provided extensive testimony as to Mr. Xie's involvement in the Lin DTO based on surveillance, public and financial records, the execution of search warrants, and the inspection of electronic devices.  See id. at 42–98.  He testified, inter alia, that he saw Mr. Xie at grow and stash houses utilized by the Lin DTO, id. at 42–52, 65–68, that Mr. Xie had ownership in Lin DTO properties and was involved in the purchase and sale of properties used for its operations, id. at 67–70, 77–80, 93–95, and that Mr. Xie had drug customers of his own, id. at 52.  Several Lin DTO members, including Naigang, also testified to Mr. Xie's involvement, including his provision of capital for the operation, his role in

2

finding customers, and the fact that he received marijuana transported by witnesses whom he then paid.  II Aplt. App. 314–15, 341–44, 346–47.  The government also admitted photographs of Mr. Xie with other Lin DTO members at Lin DTO properties, Mr. Xie's text conversations, and other records from Mr. Xie's electronic devices.  E.g., I Aplt. App. 45–46, 70–71, 80–82.

The jury found him guilty, and the court sentenced him to 120 months in prison.  I Aplee. Supp. App. 29, 31.  Other pertinent facts are discussed as we address the specific contentions on appeal.

## Discussion

### A.  Evidentiary Issues.

Mr. Xie's first two claims of error are evidentiary.  First, Mr. Xie contends that portions of SA Reinsch's testimony amounted to improper overview testimony.  Aplt. Br. at 18–23.  Second, he argues that the admission of an organizational chart showing Lin DTO's structure violated Rules 611(a) and 1006.  Id. at 23–30.

We generally review a district court's evidentiary decisions for abuse of discretion.  United States v. Paycer, 154 F.4th 1261, 1271 (10th Cir. 2025).  That occurs if the court's ruling was based on an error of law or a clearly erroneous finding of fact, or if it shows a clear error in judgment.  United States v. Burgess, 99 F.4th 1175, 1183 (10th Cir. 2024).

If the defendant objects based solely on evidentiary grounds, harmless error review applies.  United States v. Harper, 118 F.4th 1288, 1300 (10th Cir. 2024).  Under this standard, we consider whether the government has proven by a

3

preponderance of the evidence that the defendant's substantial rights were not affected. Id.; Fed. R. Crim. P. 52(a); 28 U.S.C. § 2111. But if the claim is not preserved, we review for plain error. United States v. Lopez, 131 F.4th 1114, 1122 (10th Cir. 2025). To establish plain error, the defendant must show that (1) an error occurred, (2) the error was plain or obvious, (3) the error affected the defendant's substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id.

### 1. Special Agent Reinsch's Testimony.

We begin with Mr. Xie's overview testimony claim. Mr. Xie argues that SA Reinsch gave improper overview testimony because he strayed into matters reserved for the jury, namely Mr. Xie's guilt and mental state, and improperly previewed other witness testimony. Aplt. Br. at 20–23.

"Overview testimony is . . . usually offered at the beginning of trial by a government agent as a way to preview the government's case, and can include lay and expert opinion. It occurs when a witness is put on the stand to testify before there has been any evidence admitted for the witness to summarize." United States v. Brooks, 736 F.3d 921, 930 (10th Cir. 2013) (citation modified). "Courts generally allow overview testimony to the extent it concerns how an investigation began, the law enforcement agencies involved, or the investigative technique used." United States v. Banks, 884 F.3d 998, 1023 (10th Cir. 2018) (citation modified). But it becomes improper when it "stray[s] into matters that are reserved for the jury, such

4

as opinions about a defendant's guilt or a witness's credibility." Brooks, 736 F.3d at 930.

The parties contest whether Mr. Xie properly preserved this issue. During SA Reinsch's testimony, the government asked him about Mr. Xie's role in the Lin DTO, to which Mr. Xie's counsel objected because there was "no basis for that opinion at this point in time" as "[t]here[ was] no evidence[,]" which the court sustained. I Aplt. App. 34–35. Mr. Xie contends that this was sufficient to preserve his overview-testimony objection. Aplt. Br. at 20–21. We disagree. Mr. Xie objected at the beginning of SA Reinsch's testimony; SA Reinsch then testified extensively. Given the nature, timing, and resolution in Mr. Xie's favor of this objection, it was insufficient to serve as an objection to any other portion of SA Reinsch's testimony. And Mr. Xie never objected to the portions of SA Reinsch's testimony, discussed below, that he now claims were improper. The issue was not preserved, so we review Mr. Xie's claim for plain error.[1]

Turning to the merits of Mr. Xie's claim, he points to three instances of alleged improper overview testimony. First, Mr. Xie argues that SA Reinsch "strayed into matters reserved for the jury" when asked whether Mr. Xie was involved in marijuana trafficking based on a photo of Mr. Xie at a Lin DTO property,

---

[1] Mr. Xie objected two more times during SA Reinsch's testimony. I Aplt. App. 35–36, 72. But only in his reply brief does he contend that these two objections were sufficient to preserve his overview-testimony claim. Aplt. Reply Br. at 1–3. Accordingly, this argument is waived. United States v. Eddings, 158 F.4th 1133, 1152 (10th Cir. 2025).

to which he answered affirmatively.  Aplt. Br. at 21; I Aplt. App. 201–02.  But SA Reinsch testified that he surveilled Naigang, Mr. Xie, and another Lin DTO member exiting the property with two bags and placing them in a car; the bags were later searched and found to contain 28 pounds of marijuana.  I Aplt. App. 45–48, 201–02.  Therefore, this was not improper overview testimony because SA Reinsch testified from personal knowledge.  See Brooks, 736 F.3d at 931 n.2; see also United States v. Marquez, 898 F.3d 1036, 1048–49 (10th Cir. 2018) (no error where a law enforcement witness testified to the defendant's role in a drug conspiracy because her testimony "was based on her personal observations").

Second, Mr. Xie takes issue with SA Reinsch's statement that Mr. Xie and another individual "knowingly were operating [a] grow in the black market."  Aplt. Br. at 21; I Aplt. App. 95.  Mr. Xie seemingly contends that this statement pertained to his guilt.  But he takes this statement out of context.  SA Reinsch was discussing messages obtained from Mr. Xie's electronic devices that he had reviewed.  I Aplt. App. 58, 93–95.  He stated, based on the content of the messages, that the two were discussing the distribution of marijuana and division of profits from a grow, while also discussing its profitability if marijuana became fully legal.  Id. at 95.  Only then did he make the statement in question.  Id.  Because SA Reinsch's testimony was based on his own review of the text messages, it was not improper overview testimony.

Finally, Mr. Xie takes issue with SA Reinsch's testimony that another witness, Amy Nguyen, had "picked up mari[j]uana for Mr. Xie and Mr. Naigang Lin" in

Denver, as it purportedly conflicted with her own testimony as to the pickup location and who instructed her to make the pickup. Aplt. Br. at 21–22 (quoting I Aplt. App. 119). But Ms. Nguyen's testimony about the pickup location did not conflict with SA Reinsch's testimony — she said she picked up the marijuana in "either Colorado or Oklahoma" but could not remember the exact location. II Aplt. App. 325. Further, it is true that Ms. Nguyen testified that another individual, Brian Ewen, instructed her to make the pickup. Id. But just before making that statement, Ms. Nguyen testified that Mr. Xie and Mr. Ewen were the ones responsible for organizing deliveries. Id. at 322. Thus, her testimony indicates that she ultimately acted at Mr. Xie's and Mr. Ewen's direction and does not conflict with SA Reinsch's testimony. Accordingly, we find no error here.[2]

### 2. The Organizational Chart.

Mr. Xie also argues that the district court erred in admitting G-15, a chart illustrating the structure of the Lin DTO, because it violated Rules 611(a) and 1006. Aplt. Br. at 23–30. Mr. Xie did not object to the admission of G-15 as evidence at trial, so we review its admission for plain error. Paycer, 154 F.4th at 1271.

---

[2] Mr. Xie also argues that SA Reinsch's testimony violated Rule 704(b). Aplt. Reply Br. at 4–11. But he only raised this argument for the first time in his reply brief, so the argument is waived. Eddings, 158 F.4th at 1152.

And to the extent that Mr. Xie contends that most or the entirety of SA Reinsch's testimony was improper overview testimony, such a claim fails because he has not pointed to any well-settled law in this circuit that has "condemned unobjected-to overview testimony" to such an extent. Marquez, 898 F.3d at 1052 (citation modified).

We first address Mr. Xie's Rule 1006 claim. That Rule governs the admissibility of summaries, charts, or calculations "offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence." Fed. R. Evid. 1006(a). G-15 did not summarize any materials that were otherwise too voluminous to be examined in court, so Rule 1006 is inapplicable here. See United States v. Ray, 370 F.3d 1039, 1046 (10th Cir. 2004), cert. granted and judgment vacated on other grounds, 125 S. Ct. 995 (2005), and opinion reinstated in part, 147 F. App'x 32 (10th Cir. 2005).

Turning to his other claim, Rule 611(a) gives the court "reasonable control over the mode and order of examining witnesses and presenting evidence[.]" Fed. R. Evid. 611(a). Under 611(a), the district court has discretion to admit summary evidence. Ray, 370 F.3d at 1046–47. Such evidence "comes toward the end of a case and is used to repackage complex testimony or already-admitted evidence for the jury." Brooks, 736 F.3d at 931. But charts constructed by a witness using non-trial sources are inadmissible under Rule 611(a). United States v. Stiger, 413 F.3d 1185, 1198 (10th Cir. 2005).

Here, G-15 was created by SA Reinsch based on his investigation and was admitted before the government introduced any evidence establishing Mr. Xie's role in the Lin DTO. I Aplt. App. 34–35, 40–41. But we need not decide whether the chart's admission was a clear or obvious error because Mr. Xie cannot show that the error affected his substantial rights. To do so, he must show a reasonable probability

8

that, but for the error, the trial's outcome would have been different. United States v. Griffith, 65 F.4th 1216, 1218 (10th Cir. 2023). In assessing whether such a probability exists, we consider the strength of each party's case, whether the improperly admitted evidence affected either party's case theory, and the extent to which the parties emphasized the improper testimony. Id. Ultimately, we assess the claimed error in the context of the entire trial. See United States v. Milton, 62 F.3d 1292, 1293 (10th Cir. 1995).

Mr. Xie points to several issues with the chart that resulted in prejudice, including purported misleading or inaccurate information; that Mr. Xie's photo is framed in red and is larger and above other Lin DTO members; that there is a large HSI badge on the chart, which was "an obvious effort to stamp the Government's imprimatur" on it; that the chart minimized the role that others played in the Lin DTO "to focus the jury's attention on Mr. Xie"; and that the chart was up during most of the trial and was available to the jury during deliberations. Aplt. Br. at 25–27. He contends that the government used the chart to assume facts that it needed to prove beyond a reasonable doubt and prejudge Mr. Xie's guilt. Id. at 27–28. We disagree.

Viewing the other evidence in the light most favorable to the government, see United States v. St. Clair, No. 89-1383, 1991 WL 47106, at *1 n.3 (10th Cir. Mar. 19, 1991), we conclude that there was overwhelming evidence as to Mr. Xie's involvement in the Lin DTO, including SA's Reinsch's testimony, the testimony of Naigang and other Lin DTO members, electronic records, and other corroborating

9

evidence.[3]  By contrast, Mr. Xie's counsel called four witnesses, three of whom were character witnesses.  II Aplt. App. 459–64.  The fourth witness he called was SA Reinsch, and his limited direct examination did not rebut most of the inculpatory evidence presented.  Id. at 464–67.

And although the government referenced the chart, it mostly did so as a visual aid to identify Lin DTO members during SA Reinsch's testimony.  E.g., I Aplt. App. 51, 98–99, 107–08, 112, 114.  Moreover, the government did not mention, let alone emphasize, the chart during closing arguments.  Additionally, Mr. Xie's counsel had an opportunity to cross-examine SA Reinsch about the chart and did not request any limiting instructions, further weighing against Mr. Xie.  See United States v. Renteria, 720 F.3d 1245, 1253 (10th Cir. 2013).  Therefore, any error did not affect Mr. Xie's substantial rights.[4]

---

[3] Mr. Xie argues that there was no corroborating evidence for the chart's claims that Daniel Walsh delivered marijuana to Mr. Xie and that Naiqing Lin transported marijuana for Mr. Xie.  I Aplee. Supp. App. 39; Aplt. Br. at 26.  He further contends that "much of the evidence on which the chart relied was conflicting[,]" pointing to Barry Stadler's testimony that he delivered marijuana to Mr. Xie, which purportedly contradicted Naigang's testimony that all deliveries went to a stash house, as well as the fact that Mr. Walsh did not identify Mr. Xie at trial.  Aplt. Br. at 26.  The fact that evidence and its inferences may conflict is the essence of a trial.  Regardless, these points are immaterial in the context of the entire trial given the overwhelming evidence presented by the government.

[4] In his reply brief, Mr. Xie argues for the first time that admission of the chart was clear error because it violated Rule 107, and that the admission of SA Reinsch's testimony and the chart was cumulative error.  Aplt. Reply Br. at 11–21.  Again, we consider these arguments waived.  Eddings, 158 F.4th at 1152.

**B. The Organizer/Leader Enhancement.**

Finally, Mr. Xie contends that the district court erred when it applied the organizer/leader enhancement under U.S.S.G. § 3B1.1 and accordingly declined to apply the safety valve under § 5C1.2.[5]  Aplt. Br. at 30–34.  Mr. Xie preserved this claim.  III Aplt. App. 619–24.  Therefore, "we review the district court's factual finding that [he] acted as a leader or organizer under § 3B1.1 for clear error.  Under this standard, we will not reverse the district court's finding unless, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed."  United States v. Zhou, 717 F.3d 1139, 1149 (10th Cir. 2013) (citation modified).  We will not disturb the district court's factual findings "if its account of the evidence is plausible in light of the record viewed in its entirety, even if we would have weighed the evidence differently."  United States v. Gehrmann, 966 F.3d 1074, 1085 (10th Cir. 2020) (citation modified).

Section 3B1.1 calls for a four-level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]"  U.S.S.G. § 3B1.1(a).  The district court found that Mr. Xie was "the money man" for the Lin DTO because he "supplied substantial resources to finance the whole operation[,]" "he was involved in recruiting other

---

[5] A defendant does not qualify for the safety valve if the court applies the organizer/leader enhancement.  See U.S.S.G. § 5C1.2(a); United States v. Juarez-Sanchez, 558 F. App'x 840, 843 (10th Cir. 2014).  On appeal, the parties only dispute whether Mr. Xie was ineligible for the safety valve because the district court applied the organizer/leader enhancement.  Aplt. Br. at 31; Aplee. Br. at 34.

11

investors[,]" Naigang referred to him as his "partner[,]" he "set[] up" sales of marijuana, and he was "in attendance at the various stash houses . . . on a relatively regular basis[.]"  III Aplt. App. 629–30.  The court rejected Mr. Xie's contention that he was merely a real estate investor and found that his role was akin to "an organizer."  Id. at 629–31.

Mr. Xie argues that the essence of the enhancement "is control, organization, and responsibility for the actions of other individuals[.]"  Aplt. Br. at 33 (emphasis omitted) (quoting United States v. Sallis, 533 F.3d 1218, 1223 (10th Cir. 2008)).  He contends that the district court erred because there was no evidence that he had any decision-making authority over grow operations or other individuals in the Lin DTO.  Id. at 32–34.  He instead argues that his "only role was in facilitating the real estate and finding an occasional customer."  Id. at 34.

The roles listed in § 3B1.1(a) are disjunctive, so a defendant need only qualify for one of them for the enhancement to apply.  See United States v. Snow, 663 F.3d 1156, 1162 (10th Cir. 2011).  The Sentencing Guidelines commentary lists various factors that the court may consider when deciding whether the enhancement applies.  Those factors

> include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.  While being a "'leader' requires control over underlings . . . no control is necessary to qualify as an 'organizer.'"  Snow, 663 F.3d at 1162.

12

Rather, to be an "organizer," the defendant "need only devise a criminal scheme providing the wherewithal to accomplish the criminal objective, and coordinate and oversee the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants." Id. at 1162–63 (citation modified).

The government presented extensive evidence as to Mr. Xie's role as an organizer or leader in the Lin DTO. That evidence included an agreement with Naigang to be 50/50 partners in the operation, his provision of $320,000 in cash to Naigang as capital for the operation, his role in purchasing and selling properties used as grow operations for the Lin DTO, the fact that he proposed putting one of the properties in Naigang's brother's name to avoid scrutiny from law enforcement, and the fact that he had marijuana customers of his own. E.g., I Aplt. App. 52, 63–64; II Aplt. App. 335–36, 341–44, 346–47, 359–60, 362–63, 376. And at his sentencing hearing, Mr. Xie admitted that he helped Naigang find other investors to invest in Lin DTO's properties. III Aplt. App. 625. See United States v. Bernaugh, 969 F.2d 858, 864 (10th Cir. 1992) (enhancement applied where the defendant was found, inter alia, to be a "moneyman" or "banker" and "provided . . . expenses for the individuals he recruited"); United States v. Baxter, 80 F. App'x 74, 76–77 (10th Cir. 2003) (same where the defendant, inter alia, "rented out apartments for the storage and distribution of the drugs . . . arranged pick-ups and drop-offs . . . and . . . placed another person in charge of the trafficking system").

To the extent that Mr. Xie argues that he lacked any authority over others, no "hierarchical control" over others is necessary to qualify as an "organizer." Snow, 663 F.3d at 1162–63. In any event, the government presented evidence that Mr. Xie did direct or control others. Naigang testified that Mr. Xie was responsible for overseeing the Lin DTO's finances and would "go over the books and see . . . how many pounds of mari[j]uana we grow" when visiting grow houses. II Aplt. App. 346. SA Reinsch similarly testified that Mr. Xie was responsible for keeping track of expenses, income, and marijuana plants and shipments, and would review receipts from Lin DTO members for reimbursements. I Aplt. App. 63–64, 202–03. Additionally, text messages revealed that Mr. Xie had rejected Naigang's proposal to purchase a property because it was too small and instructed Naigang to sell smaller residential houses so as to focus on larger commercial properties. Id. at 90–92.

The district court's finding that that the organizer/leader enhancement applies is not clearly erroneous. To the contrary, it is amply supported by the record. Accordingly, Mr. Xie did not qualify for the safety valve.

**AFFIRMED**.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

14